In the Matter of LUIS A. RODRIGUEZ-ABAD, Petitioner, v LLOYD L. HURST, as Chairman of the State Human Rights Appeal Board, et al., Respondents.

First Department, October 16, 1975

*T. Frank O'Rourke* of counsel *(Koenigsberg, Norman, Alpert & O'Rourke,* attorneys), for petitioner.

*L. Kevin Sheridan* of counsel *(Mary P. Bass* and *Paula J. Levitt* with him on the brief; *W. Bernard Richland, Corporation Counsel),* for respondents.

*Per Curiam.* Petitioner in his application pursuant to section 298 of the Executive Law seeks to annul an order of the State Human Rights Appeal Board which affirmed by a 2-2 vote, an order of the State Division of Human Rights dismissing his complaint. The latter order states that the "[e]vidence does not support complainant's charge of discrimination because of his national origin. Rather it establishes that com-

plainant's performance was unsatisfactory and was the reason for his termination".

The petitioner, of Ecuadorian national origin, was hired as an instructor of sociology by Hunter College in September, 1967. In September, 1969, after receiving his Ph.D, he was promoted to Assistant Professor. In September, 1970, petitioner was transferred to the new Department of Black and Puerto Rican Studies. On February 2, 1972, the President of Hunter College appointed petitioner acting chairman of the Puerto Rican sequence of this new department for the spring, 1972 semester. On March 24, 1972, certain professors of Puerto Rican origin sent a letter to the college president protesting the appointment of a nonPuerto Rican as acting chairman. Subsequently, demonstrations directed against the petitioner and the college administration took place. Petitioner resigned as acting chairman in June, 1972. One year later, in June, 1973, petitioner was informed that the P&B Committee (Personnel and Budget) had recommended that he not be reappointed for the 1974-75 academic year. The reason given for terminating petitioner was his alleged lack of cooperation with the Department of Black and Puerto Rican Studies. On May 14, 1974, petitioner filed a complaint with the State Division of Human Rights alleging that respondents (Hunter College, President Wexler, etc.) had denied him equal terms, conditions and privileges of employment and had terminated him because of his national origin in violation of the New York State Human Rights Law (Executive Law, art 15).

After conducting an investigatory confrontation conference on June 10, 1974, wherein the complainant was present with a union representative and the respondents appeared by agents and counsel, the division dismissed petitioner's complaint as aforesaid. As aptly noted in the opinion of the presiding member of the State Human Rights Appeal Board, Ms. Irma Vidal Santaella, "the record shows that although he voluntarily quit as acting director, some of the Puerto Ricans sitting in an *ad hoc* executive committee in that department expressed opposition as to his academic judgment and professional growth. Yet, the record shows that he had functioned well as acting director until Puerto Ricans in that department objected to his job performance * * * Here, examination of the whole record indicated that although several questions of fact remained unresolved below, [petitioner] was never accorded the opportunity to present his case in a formal manner in

support of his allegations as particularized in the subject complaint. And for the division to dismiss his complaint under such circumstances it must virtually appear that as a matter of law the complaint lacks merit. But the record before us will not permit such a conclusion in that these questions of fact require a public hearing *(Mayo v Hopeman Lbr. & Mfg. Co.,* 33 AD2d 310). Thus, the order [determination and order of the State Division of Human Rights dismissing petitioner's complaint] appealed from is arbitrary, capricious and an unwarranted exercise of discretion and should be reversed and remanded for further proceedings pursuant to the Human Rights Law". We agree. The determination of the State Human Rights Appeal Board dated May 8, 1975, affirming (by a 2-2 vote) an order of the State Division of Human Rights dated August 9, 1974, dismissing the petitioner's complaint on the ground that there was no probable cause to credit the allegations of an unlawful discriminatory practice, should be annulled, on the law, and the matter remanded to the State Division of Human Rights for further proceedings not inconsistent with this opinion, without costs and without disbursements.

STEVENS, P. J., MURPHY, LUPIANO, CAPOZZOLI, and NUNEZ, JJ., concur.

Determination of the State Human Rights Appeal Board, dated May 8, 1975, unanimously annulled and vacated, on the law, without costs and without disbursements, and the matter remanded to the State Division of Human Rights for further proceedings not inconsistent with the *Per Curiam* opinion of this court filed herein.