Harold Birrs, J.
Pursuant to CPLR 3213 and section 167 of the Insurance Law, plaintiff moved for summary judgment upon the ground that this action is based upon a judgment for the payment of money only, and that there is no defense thereto, in that the defendant, having issued a liability policy to one Griacamelli, had refused to pay the judgment secured against him, and the administrator of his estate, who was substituted later as defendant.
The plaintiff’s motion for summary judgment is granted. There is no issue of fact to be tried inasmuch as the defendant is estopped from raising its defense.
The present action by the Commercial Bank of North America against the, above-named defendant follows the trial of a negligence action in October, 1966 wherein Annie Jackson and her husband, Melvin Jackson, seeking damages for negligence, recovered jury verdicts totaling $1,800 against the Commercial Bank of North America and one Carlo Griacamelli jointly.
A cross claim by the Commercial Bank against Griacamelli was decided by the court alone in favor of the Commercial Bank (see Jackson v. Commercial Bank of North America, N. Y. L. J., Oct. 17, 1966).
At the jury trial, after both sides had rested, the court was apprised of the death of GHacamelli but directed that the trial continue. Following the verdicts and appropriate legal proceedings in Rockland County, John Hall, the County Treasurer, was appointed as the administrator for the estate of Griacamelli. Thereafter a motion for summary judgment brought by the bank on its cross claim was granted against Hall, as administrator of said estate.
Griacamelli, during his lifetime, was a carpentry contractor. The defendant herein had issued a liability policy on March 22, 1960 for a period of one year insuring Giacamelli covering “A. Bodily Injury No. 1. Premises and Operations to the extent of injuries to a person injured not exceeding $10,000, and for each accident not exceeding $20,000. ’ ’ According to the exhibit submitted by defendant in connection with its *512 answering affidavits there was no coverage for ‘ ‘ A. Products completed operations. ”
At the jury trial, Mrs. Jackson claimed that on October 25, 1960, at a time when she was cleaning the basement of the Commercial Bank located on Fifth Avenue and 17th Street, a piece of the basement ceiling, then under repair and restoration by Giacamelli, fell and struck her on the head causing injuries for which recovery was obtained. It was Giacamelli’s position, among other claims, that the repair work had been completed on October 17, 1960, and therefore he could not be responsible for Mrs. Jackson’s injuries.
The defendant now asserts, as did Giacamelli in the prior action, that the repair work in question had been terminated on October 17, 1960 and since the accident occurred on October 25, a week later, it was not responsible because Giacamelli did not have 11 completed operations coverage ’ ’.
It may be assumed that by ‘ ‘ completed operations coverage ’ ’ the defendant would have undertaken to insure against accidents which occurred after a job was completed.
It appears that the defendant notified its assured, Giacamelli, that while the defendant represented Giacamelli it would not pay any judgment which might be recovered against him, since he did not have “completed operations coverage ” at the time.
It is to be noted that during the trial of the action, in which Giacamelli was a party, the defendant employed counsel who controlled the defense offered in behalf of Giacamelli.
In opposing plaintiff’s motion for summary judgment, defendant points to the testimony of a witness it called at the trial, Mr. Ellis Ordan, a vice-president of the Commercial Bank, to the effect that Giacamelli’s work was completed on October 17, 1960. Defendant, however, ignores the testimony also elicited at the trial, from Mr. William Bitzig, a sprinkler contractor, that repair of the ceiling by Giacamelli was still continuing as of October 27 in preparation for the installation of sprinklers.
The conflict between the testimony of Mr. Ordan and Mr. Bitzig was one of the many questions of fact the jury was called upon to resolve as well as whether the particular portion of the ceiling under repair alleged to have fallen was also under the control of Giacamelli.
By virtue of the verdict in plaintiff’s favor, the jury determined that the repair work by Giacamelli was still under way. Thus, it is not necessary to consider whether the defendant Giacamelli had ‘ ‘ completed operations coverage ’ ’ in determining the liability of the defendant herein. It is undisputed that the liability insurance policy issued to Giacamelli assured *513 (insured) him against claims for “bodily injuries ” at “ premises ” and during “ operations ”.
The question now presented is whether the issue asserted by defendant can be raised in this action.
The doctrine of collateral estoppel operates in this case to bar the defendant from asserting its claim and raising the issue that Mrs. Jackson’s injuries were caused by a falling ceiling after its assured had completed his labors and at a time when he had no insurance coverage.
Collateral estoppel is distinguished from “res judicata”. The latter “ requires that when a cause of action has been determined on the merits, the parties to the action are bound by the judgment and may not relitigate the same cause of action between themselves. The cause of action is merged in the prior judgment, which then acts as a bar to the maintenance of a subsequent suit on the same cause of action ” (Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5011.24). (Italics added.)
On the other hand, ‘ ‘ collateral estoppel applies only where the second action is brought on a different cause of action than that asserted in the first action; moreover collateral estoppel applies to issues rather than to entire causes of action ’ ’ (5 Weinstein-Korn-Miller, ibid.).
Although the “ only persons bound by the determinations of law and fact in a prior action are those who were parties to the action or those in privity with them ” (5 Weinstein-Ko rnMiller, par. 5011.32), this doctrine is also applicable where a “ person who controls the conduct of the litigation in furtherance of his own self-interest has had his day in court ’ ’. He ‘ ‘ should be bound by an adverse judgment even though he is not a party of record or technically in privity with a party ” (5 Weinstein-Korn-Miller, par. 5011.33, citing Developments in the Law — Res Judicata, 65 Harv. L. Rev. 818, 856).
It is apparent in this case, and the plaintiff has established as required, that the issue sought to be raised by defendant is the same as the issue in the prior action (Israel v. Wood Dolson Co., 1 N Y 2d 116) that the said issue was actually litigated and determined in the prior action (Pray v. Hegeman, 98 N. Y. 351; Schuylkill Fuel Corp. v. Nieberg Realty Corp., 250 N. Y. 304; Statter v. Statter, 2 N Y 2d 668) and that the determination of the issue was necessary to recover the judgment awarded in the prior action (Hochster v. City Bank Farmers Trust Co., 260 App. Div. 712).
While it might be questioned whether the defendant was in privity with G-iacamelli, it is beyond dispute that the defendant *514 undertook Giacamelli’s defense, controlled the conduct of his litigation, and that throughout the former trial acted in its own self-interest (Restatement, Judgments, § 84, Illustration 15).
Accordingly, the factual issue asserted by defendant may not be raised in the present cause of action. Thus, plaintiff is entitled to summary judgment.